Filed
10 February 24 P4:31
Amalia Rodriguez-Mendoza
District Clerk
Travis District
D-1-GN-10-000586

No. D-1-GN-10-000586

| | | |
|---|---|---|
| FULCRUM CREDIT PARTNERS LLC,<br>　　Plaintiff. | §<br>§<br>§ | IN THE DISTRICT COURT OF |
| v. | §<br>§ | TRAVIS COUNTY, TEXAS |
| STRATEGIC CAPITAL RESOURCES,<br>INC.<br>　　Defendant. | §<br>§<br>§ | 1 26TH JUDICIAL DISTRICT |

## PLAINTIFF'S ORIGINAL PETITION

Plaintiff Fulcrum Credit Partners LLC, through its attorneys, files this Petition against Strategic Capital Resources, Inc. ("Strategic Capital"). Based upon actual knowledge with respect to itself and its own acts, and upon information and belief as to all other persons and matters, Fulcrum respectfully alleges as follows:

### Nature of the Claims

1. In February 2010, Strategic Capital, whose principal activity is to purchase and lease fully furnished model homes to major publicly traded homebuilders, agreed in writing to sell Fulcrum, an Austin-based investment firm, valuable claims in the Chapter 11 bankruptcy of TOUSA Homes, Inc. ("TOUSA"), a Florida-based homebuilding company with a significant presence in Texas. Strategic Capital agreed to sell the claims to Fulcrum at an agreed price on customary terms. After negotiations, Strategic Capital stated that the parties' agreement was "Confirmed."

2. Acting in reliance on Strategic Capital's representations and the terms of their deal, Fulcrum was reasonably certain to sell the claims to a third party for a higher price or realize significant value on the claims through the ultimate reorganization of TOUSA. But at the eleventh hour, Strategic Capital reneged.

**EXHIBIT**

_A_

3. Strategic Capital's actions deprived Fulcrum of the benefit of the parties' bargain. Fulcrum has no recourse but to bring these claims for its expected profits and other damages to which it is entitled under New York law.

### Discovery Control Plan

4. Discovery is to be conducted under Level 2 of Tex. R. Civ. P. 190.1.

### Parties

5. Plaintiff is a corporation organized under the laws of the State of Texas, with its home office and principal place of business in Texas.

6. Defendant Strategic Capital Resources, Inc. is a Florida corporation. Strategic Capital may be served through its designated agent for service of process in Texas, Reid C. Wilson, at 2500 Fannin Street, Houston, Texas 77002.

### Jurisdiction and Venue

7. This Court has subject matter jurisdiction because the amount in controversy exceeds the minimum jurisdictional limits of the Court.

8. This Court has personal jurisdiction over Strategic Capital. Strategic Capital, through its business activities in Texas, has created continuous and systematic contacts with Texas. In addition, Strategic Capital, through the actions of its officers and employees, engaged in business in Texas by means of breaching a contract or committing torts in the state, which is the basis for the claims against it. The injuries Strategic Capital has inflicted on Fulcrum are felt in this State, and Strategic Capital knew or should have known that the harmful effects of its conduct would occur here. Jurisdiction over Strategic Capital is therefore proper under the Texas Long-Arm Statute.

9.     Venue in this action is proper in Travis County pursuant to Section 15.002(a)(1) of the Texas Civil Practice and Remedies Code because all or a substantial part of the events giving rise to the cause of action stated herein occurred in Travis County.

### Facts Giving Rise to These Claims

A.     **Strategic Capital Agrees to Sell the Bankruptcy Claims.**

10.     Strategic Capital is dedicated to the acquisition, development, leaseback and sale of residential real estate. Among Strategic Capital's assets are claims against TOUSA, the homebuilding arm of Tousa, Inc., a company that builds, designs, and markets residential homes. TOUSA owed Strategic Capital a repurchase obligation to buy back several hundred property lots, worth approximately $46 million. On January 29, 2008, TOUSA filed for Chapter 11 bankruptcy protection.

11.     Fulcrum is an investment firm whose business includes providing a financial market for distressed assets, such as valid claims against bankrupt companies, at negotiated discounts. It then holds or resells them to later buyers, to secure a higher return in the future. For sellers of such impaired claims like Strategic Capital, Fulcrum provides a valuable source of ready cash for otherwise illiquid assets.

12.     From October 2009 through February 2010, Strategic Capital and Fulcrum negotiated over an acceptable price for the approximately $46 million (face value) in claims that Fulcrum was interested in buying. On February 4, 2010, Strategic Capital stated that it was "confirmed with two week closing" that Fulcrum would purchase "all 46MM of the TOUSA claim." Fulcrum sent an electronic "confirm" on February 5, confirming the essential terms of the agreement, and incorporating Fulcrum's standard terms and conditions.

13.     Strategic Capital had numerous phone conversations throughout this period with Fulcrum in Texas. Consistent with financial industry trading standards and with

Fulcrum's own business practices, those conversations were automatically recorded. During one of those conversations on February 5, David Miller, Chairperson for Strategic Capital, confirmed on Strategic Capital's behalf that "I'm going to sell and you're going to buy," and stated that they "have a deal on it, absolutely." Then, on February 22, Mr. Miller again reconfirmed the agreement on Strategic Capital's behalf, responding "yeah, we do" to Fulcrum's statement: "We have an agreement between the two of us."

14.     Strategic Capital made it clear that the deal need not close within the two week period:

> You can tell your back office that the closing date will take place when you guys are satisfied as to the claims…I don't want to put you under pressure. We aren't talking about chump change here and you have a right to do your due diligence. If it takes a little more time, then it's going to take a little more time. Period. I don't want to hold a gun to your head and say you have to buy it by noon tomorrow or you're gone. That's not fair.

Strategic Capital emphasized that if closing were to take more time it "absolutely [has] no issue whatsoever." Relying on this open-ended closing date, on February 23, Fulcrum forwarded a Purchase and Sale Agreement to Strategic Capital for its review and execution.

15.     Strategic Capital knew Fulcrum would rely on these representations. It knew Fulcrum was looking for possible purchasers of the claims who might pay more than its purchase price. In early February 2010, Fulcrum was reasonably certain of either selling the claims to a third party for a higher price or realizing significant value on the claims through the ultimate reorganization of TOUSA. Either way, assuming Strategic Capital performed the deal as promised, Fulcrum would earn a profit.

**B.**     **Strategic Capital Reneges on the Deal.**

16.     Strategic Capital got seller's remorse about its contract with Fulcrum. On February 23, Mr. Miller wrote Fulcrum that he believed that "the agreement is an absolute joke." He added that, instead of following through with its deal with Fulcrum, Strategic Capital is "prepared to sell these claims to a credible buyer." When Fulcrum attempted to reason with Mr. Miller on February 23, he responded: "sue me."

17.     For Fulcrum, this was a complete surprise, wholly contrary to the parties' agreement, and a blatant attempt to evade the terms to which Strategic Capital had agreed.

### Cause of Action
### (Breach of Contract)

18.     The material facts alleged above are incorporated by reference.

19.     Fulcrum has a claim for breach of contract that has matured against Strategic Capital. Strategic Capital breached the contract by failing to satisfy the terms of the agreement, namely, to convey approximately $46 million in claims from the TOUSA bankruptcy to Fulcrum for a particular purchase price. All conditions precedent have occurred prior to the bringing of this action, and Fulcrum has fully performed its own obligations under the contract.

20.     As a direct result of Strategic Capital's breaches of its contract duties, Fulcrum incurred additional costs, in an amount to be determined at trial.

### Jury Demand

21.     Fulcrum demands a trial by jury of all material disputed fact issues.

### Prayer for Relief

Fulcrum respectfully requests that, after final hearing or trial, the Court enter final judgment against defendant Strategic Capital and in favor of Fulcrum, and that Fulcrum be awarded the following relief:

1. All actual and consequential damages to which Fulcrum is entitled;

2. All costs of this action and reasonable attorney fees that Fulcrum incurs in prosecuting this action;

3. Pre- and post-judgment interest as permitted by law; and,

4. All other and additional relief to which Fulcrum may show itself to be justly entitled, whether at law or in equity.

Respectfully submitted,

Collin J. Cox
State Bar No. 24031977
Deborah J. Karakowsky
State Bar No. 24065537
YETTER, WARDEN & COLEMAN, LLP
909 Fannin, Suite 3600
Houston, Texas 77010
(713) 632-8000
(713) 632-8002 (Fax)
ccox@ywcllp.com

Attorneys-in-Charge for Plaintiff
Fulcrum Credit Partners LLC

C I T A T I O N

T H E   S T A T E   O F   T E X A S

**CAUSE NO. D-1-GN-10-000586**

FULCRUM CREDIT PARTNERS, LLC

, Plaintiff

    vs.

STRATEGIC CAPITAL RESOURCES INC.

, Defendant

TO:   STRATEGIC CAPITAL RESOURCES INC
       BY SERVING ITS DESIGNATED AGENT, REID C. WILSON
       2500 FANNIN STREET
       HOUSTON, TEXAS 77002

Defendant, in the above styled and numbered cause:

YOU HAVE BEEN SUED.  You may employ an attorney.  If you or your attorney do not file a written answer with the clerk who issued this citation by 10:00 A.M. on the Monday next following the expiration of twenty days after you were served this citation and petition, a default judgment may be taken against you.

Attached is a copy of the ORIGINAL PETTIION of the PLAINTIFF in the above styled and numbered cause, which was filed on FEBRUARY 24, 2010 in the 126TH JUDICIAL DISTRICT COURT of Travis County, Austin, Texas.

ISSUED AND GIVEN UNDER MY HAND AND SEAL of said Court at office, February 25, 2010.

REQUESTED BY:
COLLIN JOE COX
909 FANNIN STREET
SUITE 3600
HOUSTON, TX 77010
BUSINESS PHONE:(713)632-8069
FAX:(713)632-8002



AMALIA RODRIGUEZ-MENDOZA
Travis County District Clerk
Travis County Courthouse
1000 Guadalupe, P.O. Box 679003 (78767)
Austin, Texas 78701

By _____
    DIANA STATON, Deputy

-- - -- - -- - -- - -- - R E T U R N -- - -- - -- - -- - -- - --

Came to hand on the _____ day of _____, _____ at _____ o'clock ____M., and executed at

_____ within the County of _____ on the

_____ day of _____, _____, at _____ o'clock ____M., by delivering to the within named

_____, each in

person, a true copy of this citation together with the EFILE MANDATE NOTICE accompanying pleading, having first

attached such copy of such citation to such copy of pleading and endorsed on such copy of citation the date of

delivery.

      Service Fee: $ _____

      Sworn to and subscribed before me this the

      _____ day of _____, _____.

_____
Notary Public, THE STATE OF TEXAS

_____
Sheriff / Constable / Authorized Person

By:_____

_____
Printed Name of Server

_____ County, Texas

D-1-GN-10-000586              SERVICE FEE NOT PAID           D01 - 46307

      ⌐ Original       ⌐ Service Copy

C I T A T I O N

THE   STATE   OF   TEXAS

## CAUSE NO. D-1-GN-10-000586

FULCRUM CREDIT PARTNERS, LLC

, Plaintiff

vs.

STRATEGIC CAPITAL RESOURCES INC.

, Defendant

TO:   STRATEGIC CAPITAL RESOURCES INC
      BY SERVING ITS DESIGNATED AGENT, REID C. WILSON
      2500 FANNIN STREET
      HOUSTON, TEXAS 77002

Defendant, in the above styled and numbered cause:

YOU HAVE BEEN SUED.  You may employ an attorney.  If you or your attorney do not file a written
answer with the clerk who issued this citation by 10:00 A.M. on the Monday next following the
expiration of twenty days after you were served this citation and petition, a default judgment may
be taken against you.

Attached is a copy of the ORIGINAL PETTIION of the PLAINTIFF in the above styled and numbered
cause, which was filed on FEBRUARY 24, 2010 in the 126TH JUDICIAL DISTRICT COURT of Travis County,
Austin, Texas.

ISSUED AND GIVEN UNDER MY HAND AND SEAL of said Court at office, February 25, 2010.

REQUESTED BY:
COLLIN JOE COX
909 FANNIN STREET
SUITE 3600
HOUSTON, TX 77010
BUSINESS PHONE: (713) 632-8069
FAX: (713) 632-8002



AMALIA RODRIGUEZ-MENDOZA
Travis County District Clerk
Travis County Courthouse
1000 Guadalupe, P.O. Box 679003 (78767)
Austin, Texas 78701

By _____
   DIANA STATON, Deputy

-- -- - - - - - - - -- - R E T U R N -- - -- - -- -- - -- - --

Came to hand on the ____ day of _____, _____ at _____ o'clock ____M., and executed at
_____ within the County of _____ on the
____ day of _____, _____, at _____ o'clock ____M., by delivering to the within named
_____, each in
person, a true copy of this citation together with the EFILE MANDATE NOTICE accompanying pleading, having first
attached such copy of such citation to such copy of pleading and endorsed on such copy of citation the date of
delivery.

Service Fee: $ _____

Sworn to and subscribed before me this the

_____ day of _____, _____.

_____
Sheriff / Constable / Authorized Person

By: _____

_____
Printed Name of Server

_____ County, Texas

_____
Notary Public, THE STATE OF TEXAS

D-1-GN-10-000586

☐ Original      ☐ Service Copy

SERVICE FEE NOT PAID

D01 - 46307



## Amalia Rodriguez–Mendoza

District Clerk, Travis County

Travis County Courthouse Complex

P. O. Box 679003

Austin, Texas 78767

Date: November 3, 2008

TO: All attorneys of record in cases pending in Travis County District Court

NOTICE OF ENTRY OF NEW E-FILE MANDATE ORDER

The 2008 Court Order Regarding E-filing is effective as of November 1, 2008. You can view this order by selecting the link near the top of the following web page:

http://www.co.travis.tx.us/district_clerk/default.asp

If you have not yet established an e-filing account, please refer to Texas Online's eFiling Main Information at:

http://www.texasonline.com/portal/tol/en/info

We are asking that you establish your account as soon as possible, but a grace period through the end of the year has been implemented to allow you adequate time to make e-filing preparations.

If you have any questions regarding the e-filing process or the order's application to any of your pending cases, you may call 512-854-FILE (512-854-3453) for assistance.

Thank you.

Amalia Rodriguez-Mendoza
Travis County District Clerk


Travis County District Clerk's Office
Civil Division

| Administrative Offices | Civil and Family Division | Criminal Division | Jury Office |
|---|---|---|---|
| (512) 854-9737 | (512) 854-9457 | (512) 854-9420 | (512) 854-4295 |
| Fax: 854-4744 | Fax: 854-6610 | Fax: 854-4566 | Fax: 854-4457 |

Filed
10 February 25 A10:29
Amalia Rodriguez-Mendoza
District Clerk
Travis District
D-1-GN-10-000586

No. D-1-GN-10-000586

| | | |
|---|---|---|
| FULCRUM CREDIT PARTNERS LLC, | § | IN THE DISTRICT COURT OF |
| Plaintiff. | § | |
| | § | |
| | § | |
| v. | § | TRAVIS COUNTY, TEXAS |
| | § | |
| STRATEGIC CAPITAL RESOURCES, | § | |
| INC. | § | |
| Defendant. | § | 126TH JUDICIAL DISTRICT |

## FULCRUM'S VERIFIED APPLICATION FOR TEMPORARY RESTRAINING ORDER, TEMPORARY INJUNCTION, AND PROTECTIVE AND CONFIDENTIALITY ORDER

Plaintiff Fulcrum Credit Partners LLC ("Fulcrum") requests that the Court issue a temporary restraining order and, thereafter, a temporary injunction directing Strategic Capital Resources, Inc. ("Strategic Capital") to refrain from selling its claims in the TOUSA Homes, Inc. ("TOUSA") Chapter 11 bankruptcy to a third party. The claims were rightfully sold to Fulcrum, and their special and unique character makes emergency relief necessary. Fulcrum also requests that the Court enter a Protective and Confidentiality Order to protect confidential information possessed by both parties that is likely to be disclosed in this case.

### Introduction

In February 2010, Strategic Capital, whose principal activity is to purchase and lease fully furnished model homes to major publicly traded homebuilders, agreed in writing to sell Fulcrum, an Austin-based investment firm, valuable claims in the Chapter 11 bankruptcy of TOUSA, a Florida-based homebuilding company with a significant presence in Texas. Strategic Capital agreed to sell the claims to Fulcrum at an agreed price on customary terms. After negotiations, Strategic Capital stated that the parties' agreement was "Confirmed."

These claims represent an influential block of claims in the TOUSA bankruptcy. They are the most unique claims of their kind, because the holder of these claims can

substantially influence the course of the TOUSA bankruptcy. For these reasons, Fulcrum was highly motivated to complete the sale and relied on Strategic Capital's representations that the deal had closed. Unfortunately, at the eleventh hour, Strategic Capital reneged and told Fulcrum it was "talking to other people." Fulcrum has filed a lawsuit against defendant in an action currently pending in the 126th Civil District Court of Travis County, Texas (Case No. D-1-GN-10-000586). But Fulcrum, which is now suffering serious and irreparable harm, has no pre-trial remedy but to bring this action for injunctive relief to protect its rights. The requested relief will preserve the status quo until trial and protect confidential information contained in documents possessed by both parties.

### Facts Giving Rise to These Claims

Strategic Capital is dedicated to the acquisition, development, leaseback and sale of residential real estate. Among Strategic Capital's assets are claims against TOUSA, the homebuilding arm of Tousa, Inc., a company that builds, designs, and markets residential homes. TOUSA owed Strategic Capital a repurchase obligation to buy back several hundred property lots, worth approximately $46 million. On January 29, 2008, TOUSA filed for Chapter 11 bankruptcy protection.

Fulcrum is an Austin-based investment firm whose business includes providing a financial market for distressed assets, such as valid claims against bankrupt companies, at negotiated discounts. For sellers of such impaired claims like Strategic Capital, Fulcrum provides a valuable source of ready cash for otherwise illiquid assets.

From October 2009 through February 2010, Strategic Capital and Fulcrum negotiated over an acceptable price for the approximately $46 million (face value) in claims that Fulcrum was interested in buying. On February 4, 2010, Strategic Capital stated that it was "confirmed with two week closing" that Fulcrum would purchase "all 46MM of the TOUSA

claim" at a particular price.   Exh. A.   Fulcrum sent an electronic "confirm" on February 5, confirming the essential terms of the agreement, and incorporating Fulcrum's standard terms and conditions. Exh. B.

Strategic Capital and Fulcrum (always located in Texas) had numerous phone conversations throughout this period.   Consistent with financial industry trading standards and with Fulcrum's own business practices, those conversations were automatically recorded. During one of those conversations on February 5, David Miller, Chairperson for Strategic Capital, confirmed on Strategic Capital's behalf that "I'm going to sell and you're going to buy," stating that they "have a deal on it, absolutely."   Then, on February 22, Mr. Miller again reconfirmed the agreement, responding "yeah, we do" to Fulcrum's statement: "We have an agreement between the two of us."

Strategic Capital made it clear that the deal need not close within the two week period:

> You can tell your back office that the closing date will take place when you guys are satisfied as to the claims...I don't want to put you under pressure.   We aren't talking about chump change here and you have a right to do your due diligence.   If it takes a little more time, then it's going to take a little more time.   Period.   I don't want to hold a gun to your head and say you have to buy it by noon tomorrow or you're gone.   That's not fair.

Strategic Capital emphasized that if closing were to take more time it "absolutely [has] no issue whatsoever."   Relying on this open-ended closing date, on February 23, Fulcrum forwarded a Purchase and Sale Agreement to Strategic Capital for its review and execution. Exh. C.

Strategic Capital knew Fulcrum would rely on these representations.   It knew Fulcrum was looking for possible purchasers of the claims who might pay more than its purchase price.   In early February 2010, Fulcrum was reasonably certain of either selling the claims to a

third party for a higher price or realizing significant value on the claims through the ultimate reorganization of TOUSA. Either way, assuming Strategic Capital performed the deal as promised, Fulcrum would earn a profit.

Strategic Capital got seller's remorse about its contract with Fulcrum. On February 23, Mr. Miller wrote Fulcrum that he believed that "the agreement is an absolute joke." Exh. C. He added that, instead of following through with its deal with Fulcrum, Strategic Capital is "prepared to sell these claims to a credible buyer." *Id.* When Fulcrum attempted to reason with Mr. Miller on February 23, he responded: "sue me."

For Fulcrum, this was a complete surprise, wholly contrary to the parties' agreement, and a blatant attempt to evade the terms to which Strategic Capital had agreed.

## Request for Temporary Restraining Order and Temporary Injunction

The purpose of a temporary restraining order is to preserve the status quo. *Butnaru v. Ford Motor Co.*, 84 S.W.3d 198, 204 (Tex. 2002). The status quo is defined as the last, actual, peaceable, noncontested status that preceded the controversy. *State v. Sw. Bell Tel. Co.*, 526 S.W.2d 526, 528 (Tex. 1975). Here, the status quo is that Strategic Capital owns the TOUSA claims and has agreed to sell them to Fulcrum, not another buyer. Preserving that status quo requires that Strategic Capital be prohibited from consummating a transaction concerning the same claims that Fulcrum has already purchased, and an injunction is warranted under Tex. Civ. Prac. & Rem. Code § 65.011.

Fulcrum is entitled to injunctive relief because, as shown below, it meets the necessary elements: (1) a cause of action against defendants in the underlying lawsuit; (2) a probable right to the relief sought in that lawsuit; and (3) imminent and irreparable injury in the interim. *Butnaru*, 84 S.W.3d at 204. To warrant issuance of a temporary injunction, Fulcrum

-4-

need only show the Court evidence of a probative character to prove these elements. *Sw. Bell Tel. Co.*, 526 S.W.2d at 528. Fulcrum far exceeds the required standards.

**A.     Fulcrum Has a Probable Right to Relief in the Underlying Lawsuit.**

The facts, as described above, alleged in greater detail in its Original Petition, and verified by the accompanying affidavit, show that Fulcrum has much more than a mere probability of success in the underlying lawsuit. Indeed, although defendant has not yet answered in this matter, it is very likely that the following facts are undisputed:

- Strategic Capital agreed to sell its TOUSA claims to Fulcrum at a particular price.

- Fulcrum provided Strategic Capital written confirmation of the deal.

- Strategic Capital reconfirmed that it had a binding agreement with Fulcrum.

- Despite the parties' agreement, Strategic Capital's Chairperson announced: "If somebody comes in, they want to buy it, they're real, I'll sell it." Strategic Capital is "talking to other people....[and] will continue to talk to people" about selling the claims that it agreed to sell to Fulcrum.

*See* Exhs. A-C. The evidence overwhelmingly indicates that Strategic Capital and Fulcrum had reached agreement on the transaction, and Fulcrum is likely to succeed on the merits of its claim in the underlying lawsuit.

**B.     Without Injunctive Relief, Fulcrum Will Suffer Imminent Harm.**

If the status quo is not preserved, Fulcrum will suffer imminent harm. These particular claims represent an influential block of claims in the TOUSA bankruptcy. They are far more valuable than other general unsecured claims in the bankruptcy. By holding these claims a buyer could influence and possibly control the bankruptcy. *See* Exh. D (Hamilton Aff.) ¶ 2. Moreover, in addition to losing these unique claims, Fulcrum would suffer substantial

reputational harm in the industry if Strategic Capital is allowed to agree in writing to the terms of a deal, then renege at the last moment. *Id.* ¶ 3.

C.   **The Harm to Fulcrum is Irreparable, and There Is No Adequate Remedy at Law.**

To establish that the imminent harm is irreparable, Fulcrum must show that it cannot be "adequately compensated in damages or the damages cannot be measured by any pecuniary standard." *Beasley v. Hub City Texas, L.P.*, 2003 WL 22254692, at *7 (Tex. App.--Houston [1st Dist.] Sept. 29, 2003, no pet.). Threatened harm to the moving party's reputation constitutes irreparable harm and warrants injunctive relief to preserve the status quo pending trial. *Id.* at *7-8; *see also Vincent Towers v. Grogan*, 1998 WL 191760, at *4 (Tex. App.--Houston [1st Dist.] April 23, 1998, no pet.) (upholding injunction granted to prevent loss of business reputation because such injury is "not easily assigned a dollar value"); *AIG Risk Mgmt. Inc. v. Motel 6 Operating L.P.*, 960 S.W.2d 301, 309 (Tex. App.--Corpus Christi 1998, rehearing overruled) (upholding injunction based on "damage to" the movant's "good reputation," and holding the damage irreparable because "an injured reputation cannot be readily restored with money"). Few situations endanger a claims trader's reputation more than a seller walking away from a solid deal. Reputational principles are squarely at issue here.

D.   **The Public Interest Weighs in Favor of the Relief Sought.**

It is clearly in the public interest for participants in the trading industry to be forced to live up to their deals, particularly where the claims sold have the unique nature of the claims at issue here. Allowing sellers to represent that a sale of such a substantial block of claims is final, only to find a different seller later, is contrary to the public interest.