IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
AUSTIN DIVISION

| | | |
|---|---|---|
| FULCRUM CREDIT PARTNERS LLC, | § § | |
| Plaintiff, | § § | |
| v. | § § § | CASE NO. A-10-CA-137LY |
| STRATEGIC CAPITAL RESOURCES, INC. | § § | |
| Defendant. | § § | |

## DEFENDANT STRATEGIC CAPITAL RESOURCES, INC.'S REPLY BRIEF IN SUPPORT OF ITS AMENDED MOTION FOR SUMMARY JUDGMENT

TO THE HONORABLE LEE YEAKEL, U.S.D.J.:

NOW COMES, Defendant Strategic Capital Resources, Inc. (hereinafter "Strategic" or "Defendant") and files this *Reply Brief in Support of Its Amended Motion for Summary Judgment* in the above-styled and numbered cause. In support thereof, Strategic shows the Court as follows:

There is a great deal of overheated and unsupported rhetoric in Fulcrum's Response suggesting that it was "double-crossed" by a "savvy seller" using "underhanded negotiation tactics." Mildly put, this hyperbole is belied by the summary judgment evidence. Indeed, the underhanded—and ultimately unsuccessful—tactics in this failed negotiation were Fulcrum's.

However, Fulcrum's accusations are nothing more than a smokescreen intended to obscure several inescapable conclusions established in Strategic's Amended Motion. There was no mutual assent to the essential terms of the contemplated sale of the TOUSA bankruptcy claims. The February 5 email that Fulcrum now must rely upon as a "memorialization" of its "contract" failed to include several material terms, and thus fails for indefiniteness. Finally, there is no genuine issue that Strategic ever assented to or agreed to be bound by the Purchase and Sale Agreement, the document wherein Fulcrum attempted, for the first time, to define the

parties' potential obligations and liabilities following the sale of the TOUSA claims. For these reasons, Strategic respectfully suggests that complete summary judgment is appropriate.

## ARGUMENT AND GROUNDS

A. **Texas Law Applies to this Dispute**

Fulcrum straddles the fence on the question of which state's law applies to this dispute. While Fulcrum liberally cites Texas law throughout its Response, it also suggests, in a footnote, that New York law should apply to this dispute because "the parties clearly agreed to be bound under New York law." Fulcrum's Response at 11, n.1. However, Texas law, and not New York law, should apply to this matter for at least two reasons.

First, Fulcrum's conclusory suggestion that New York law should apply because that is what the parties agreed begs the question. The primary issue in this suit is whether Strategic reached a binding and enforceable agreement with Fulcrum. If, as Strategic contends, there was no contract, then it follows that Strategic did not agree to be bound by New York law. There is no other basis to apply New York law to this dispute beyond the purported contract. As one court succinctly described the conundrum, "it would seem to put the cart before the horse to utilize the Agreement's choice-of-law provision to determine whether there was even a contract." *Spectrum Creations, L.P. v. Carolyn Kinder International, L.P.*, 2008 WL 416264 at *55 (W.D. Tex.2008) (citing *Computer Sales Int'l v. Lycos, Inc.*, 2005 WL 3307507 (D.Mass.2005)).

Even assuming, *arguendo*, that the parties agreed to a choice of law provision, in Texas that choice of law will be given effect (1) if the contract bears a substantial relationship to the chosen state and (2) so long as the parties' choice does not thwart a fundamental policy of the state whose law would otherwise be applied. *DeSantis v. Wackenhut Corp.*, 793 S.W.2d 670, 677 (Tex. 1990). In this instance, the first requirement of this test is unmet. Neither the

purported contract nor the parties themselves have any relationship with New York. Fulcrum's allegations in its live pleading are undisputed: Strategic is located in Florida and Fulcrum's headquarters are in Austin, Texas. *See* Plaintiff's First Amended Complaint at ¶¶ 4-5. None of the communications between the parties—by either email or phone—occurred in New York. Indeed, the TOUSA claims themselves arose from a bankruptcy proceeding in Florida. *See In re TOUSA, Inc.*, U.S. Bankruptcy Court for the Southern District of Florida, Fort Lauderdale Division, Case No. 08-10928-JKO. In sum, there is no relationship, much less a "substantial" one, between the state of New York and either these parties or this dispute. Fulcrum has not established that such a relationship exists. Substantive New York law has no role in this dispute.

**B.     Questions of Indefiniteness of an Alleged Contract is a Question of Law**

Fulcrum broadly argues that the question of whether an agreement is an enforceable contract is a question of fact precluding summary judgment. Fulcrum's Response at 8. However, this blanket statement ignores Texas precedent.

In Texas, the issue of whether an agreement fails for indefiniteness is a question of law. *See, e.g., John Wood Group USA, Inc. v. ICO, Inc.*, 26 S.W.3d 12, 16 (Tex. App.—Houston [1st Dist.] 2000, pet. denied); *COC Services, Ltd. v. CompUSA, Inc.*, 150 S.W.3d 654, 664 (Tex. App.—Dallas 2004, pet. denied); *Playoff Corp. v. Blackwell*, 300 S.W.3d 451, 455 (Tex. App.—Ft. Worth 2009, pet. denied). "In order to be legally binding, a contract must be sufficiently definite in its terms so that a court can understand what the promisor undertook." *T.O. Stanley Boot Co., Inc. v. Bank of El Paso*, 847 S.W.2d 218, 221 (Tex. 1992). "If an alleged agreement is so indefinite as to make it impossible for a court to fix the legal obligations and liabilities of the parties, it cannot constitute an enforceable contract." *Chavez v. McNeely*, 287 S.W.3d 840, 845 (Tex. App.—Houston [1st Dist.] 2009, no pet.). "Where an essential term is open for future

negotiation, there is no binding contract." *T.O. Stanley Boot Co., Inc.*, 847 S.W.2d at 221.

### C.  The Parties Never Agreed Upon the Transaction's Essential Terms—Those Terms That Defined the Nature and Extent of Strategic's Potential Obligations

Fulcrum's primary quandary is that it must rely on the February 5 email "confirmation" from Mr. Hamilton to Mr. Miller ("Trade Confirm") as a memorialization of a binding and enforceable contract with Strategic.[1] Fulcrum cannot argue that Strategic agreed to the Purchase and Sale Agreement ("PSA") or that the PSA is binding on Strategic. Rather, it must successfully argue that (1) Strategic previously agreed to the terms of the Trade Confirm (including the Standard Terms and Conditions), and (2) the Trade Confirm was sufficiently definite to constitute a binding and enforceable contract to sell $46 Million in bankruptcy trade claims. On both questions, the summary judgment evidence demonstrates just the opposite.

#### 1.  The "Trade Confirm" Fails for Indefiniteness

Fulcrum continues to maintain, without authority, that the only "material" terms to the potential sale of the TOUSA bankruptcy claims were "price, type of claims, and amount of claims." Fulcrum's Response at 13. This might be the case if Fulcrum was trying to purchase a used car or a bushel of corn. However, "[e]ach contract should be considered separately to determine its material terms." *T.O. Stanley Boot Co., Inc.*, 847 S.W.2d at 221.

As Strategic outlined in its Amended Motion, the Trade Confirm failed to define numerous terms that were material to a transaction as complex as the one contemplated between these parties. Principally, of course, was the issue of recourse. *See* Strategic's Amended Motion at 13-15. Not only was the question of recourse versus non-recourse left indefinite, but, more importantly, numerous facets of the potential recourse obligations were utterly undefined.

Fulcrum does not directly dispute that recourse is a material provision in a transaction

---

[1] *See* "Trade Confirm" at Exhibit H to Strategic's Amended Motion; Exhibit 9 to Fulcrum's Response.

**DEFENDANT'S REPLY BRIEF IN SUPPORT OF ITS AMENDED MOTION FOR SUMMARY JUDGMENT—PAGE 4**

such as the one contemplated between Strategic and Fulcrum. Indeed, in one of the few reported cases discussing sales of trade claims, recourse and indemnity are specifically identified as a material provisions. *See Bear Stearns Investment Products v. Hitachi Automotive Products (USA), Inc.*, 401 B.R. 598, 617 (S.D.N.Y. 2009). To argue otherwise flies in the face of Texas law holding that a contract must be sufficiently definite to identify the "legal obligations and liabilities of the parties." *See Chavez*, 287 S.W.3d at 845.

Moreover, the "representations and warranties," indemnity, and confidentiality obligations were not defined in the Trade Confirm or materially differed from the PSA. These additional terms defined the parties' potential obligations under the proposed transaction but were never included in the Trade Confirm. Fulcrum's argument that the Trade Confirm adequately "outlined" these terms is simply unsupportable when the respective documents are placed side by side. *See* Strategic's Amended Motion at 8-9. Indeed, Fulcrum tactily concedes this point when it says that the standard terms "put[ ] Strategic on notice that they would be included in the PSA." Fulcrum's Response at 14. Simply putting a party "on notice" that it might be subject to representations and warranties, confidentiality restrictions and indemnity obligations of an undefined nature and scope is insufficient under Texas law.

    2.    Under the Reasoning in *Bear Stearns* No Binding Contract Exists

Fulcrum cites the *Bear Stearns* case, one of the few published decisions concerning sale of bankruptcy trade claims, but sidesteps the portion of that Court's holding that applies to this dispute. *See Bear Stearns Investment Products v. Hitachi Automotive Products (USA), Inc.*, 401 B.R. 598, 617 (S.D.N.Y. 2009). It does so because the *Bear Stearns* court held—in almost identical circumstances to those at bar—that there was no binding and enforceable contract. The court then applied a specific provision of New York law to hold that there was a fact issue

concerning whether the parties had a duty to negotiate the terms in good faith.

Bear Stearns, the potential buyer of bankruptcy claims from Hitachi, argued that a telephone call wherein the parties agreed to financial terms of the sale (price, type of claim and amount) bound Hitachi to consummate the deal and sell its claims. *Bear Stearns*, 401 B.R. at 606, 615. Mirroring the parties' contentions here, there was no written contract between the parties and the parties did not agree to recourse or indemnity provisions. *Id.* at 617. The *Bear Stearns* court described these terms as "clearly not akin to relatively trivial details . . . like the 'form of notice' and 'scheduling.'" *Id.* As in this case, there was an unexecuted "trade confirmation" as well as an allegation that Hitachi wrongfully sold its trade claims to another buyer at a higher price after it had agreed with Bear Stearns on financial terms. *Id.* at 614.

The *Bear Stearns* Court, applying New York law, determined that there was no binding and enforceable contract because, *inter alia*, the parties had not reached an agreement on all material terms: "impairment or buy back, right to defend and indemnification." *Id.* at 617. Moreover, the parties' conduct demonstrated that they clearly intended to be bound by executed written documents. *Id.* This is precisely what the parties here intended, demonstrated by the fact that Fulcrum sent a PSA to Strategic for review and execution.[2]  Under these facts, the *Bear Stearns* Court granted summary judgment in Hitachi's favor dismissing Bear Stearns' claim for an "implied-in-fact" contract based upon agreement to financial terms. *Bear Stearns* at 617.

The *Bear Stearns* Court then found that there was a fact issue on the question of whether a "Type II Binding Preliminary Agreement" existed between the parties. *Id.* at 624. A Type II Agreement under New York law is "one that expresses mutual commitment to a contract on agreed major terms, while recognizing the existence of open terms that remain to be negotiated . . ." *Id.* Such an agreement does not bind a party to perform under a contract and indeed one may

---

[2]     *See* Exh. I to Amended Motion.

not be reached. Rather, a party "may simply demand that his counterparty negotiate the open terms in good faith . . ." *Id.* (internal quotations omitted).

While Strategic does not concede that it even entered into a "Type II Agreement" with Fulcrum, the question is academic. No such Type II Agreement or obligation to negotiate in good faith exists under Texas law. In Texas, "[c]ourts have long held that an agreement to enter into negotiations in the future is unenforceable." *Maranatha Temple, Inc. v. Enterprise Products Co.*, 893 S.W.2d 92, 104 (Tex. App.—Houston [1st Dist.] 1994, writ denied) (citing cases). The fact that an agreement "to negotiate in the future includes a term calling for the [parties] to put forth a 'good faith effort' in the negotiations does not remove the agreement from this rule. . . [it] is still an agreement to enter into future negotiations, and, as such, it is unenforceable." *Id.*

The reasoning of *Bears Stearns* is directly on point: the absence of agreement on the material terms of recourse (among others) precludes a binding contract. Coupled with the absence of a duty to negotiate under Texas law, Strategic respectfully suggest that *Bear Stearns* provides the proper analysis of the issues raised in Strategic's Motion.

3.   Strategic Never Agreed to Fulcrum's "Standard Terms and Conditions"

Fulcrum must rely upon the enforceability of the so-called Trade Confirm to support its breach of contract claim. Therefore, it must also argue that Strategic agreed to its "Standard Terms and Conditions." ("STCs"). It is apparent from Fulcrum's Response is that there is no genuine issue of material fact concerning Strategic's lack of assent to the STCs. The summary judgment evidence conclusively demonstrates that Strategic never agreed to them.

Strategic did not assent or agree to the STCs when they were emailed to David Miller in October, 2009. There is no dispute on this point. Mr. Herzog, the Fulcrum representative responsible for communicating with Mr. Miller, could not identify a single instance where Mr.

Miller affirmatively assented to or signified agreement to the STCs.[3] Fulcrum can only argue that Mr. Miller forwarded the STCs to his attorney and that he had access to "reputable and competent legal advisors." Fulcrum's Response at 4.

Fulcrum also attempts to conjure assent to the STCs from Strategic's silence. Indeed, Fulcrum would place a duty upon Strategic to affirmatively object to the STCs. Fulcrum's Response at 15. However, under Texas law, silence and inaction will generally not be construed as consent to an offer. *Texas Association Of Counties County Government Risk Management Pool v. Matagorda County*, 52 S.W.3d 128, 132 (Tex. 2001). Put another way, "[a]n acceptance which resides solely within the exclusive knowledge of the acceptor without being communicated to the offeror is ordinarily no binding acceptance." *Advantage Physical Therapy, Inc. v. Cruse*, 165 S.W.3d 21, 26 (Tex. App.—Houston[14th Dist.] 2005, no pet.).

Moreover, there is no manifestation of assent to the STCs even after the Trade Confirm. The Trade Confirm, of course, was never signed by Mr. Miller and did not yield an email response consenting to the attached Terms and Conditions. Fulcrum is now left to cobble together an acceptance by a combination of innuendo, inaction and silence. This is insufficient as a matter of law. There is no genuine issue of material fact on this point.

### D.   Strategic's Damages, if Any, Are Limited to the Lost Profits From the Contemplated Sale to Fortress—Any Other Damage Model is Unduly Speculative

Fulcrum now makes the rather odd argument that the price it had negotiated with a potential seller five days before the alleged breach is not a proper measure of the value of those trade claims. In doing so, it necessarily argues that its principals, with purported expertise in the purchase and sale of trade claims, agreed to a sales price that was significantly below the true "value" of the TOUSA claims. Strategic's contention, simply put, is that Fulcrum's recovery for

---

[3] *See* Exh. C to Amended Motion at 98:4-99:10.

breach of contract cannot exceed the spread between the supposed purchase price and the alleged sales price. It cannot disregard that figure when it has no other summary judgment evidence establishing the trade claims' hypothetical value.

Indeed, the *Miga* decision relied upon by Fulcrum supports Strategic's argument. *See Miga v. Jensen*, 96 S.W.3d 207 (Tex. 2003). In *Miga*, the Plaintiff sought damages based not upon the value of the undelivered stock at the time of breach but upon the increased market value of the stock at the time of trial. *Id.* at 214. The Supreme Court rejected that argument and held that the value must be determined as of the date of the breach not some time in the future. *Id.*

Here, Fulcrum hopes to construct a damage model based on a hypothetical value at some point in the future after the alleged breach. This is unsupportable given Texas law that lost profits damages must be demonstrated with "reasonable certainty." *See Ramco Oil & Gas Ltd. v. Anglo-Dutch (Tenge) L.L.C.*, 207 S.W.3d 801, 825 (Tex. App.—Houston [14th Dist.] 2006, pet. denied) (citing *Miga* for the proposition that "contract damages should not put plaintiff in a better position than if the contract had been honored by giving the plaintiff a risk-free investment . . ."). The only "value" that is before this Court for summary judgment purposes is the proposed sale to Fortress. Strategic maintains that Fulcrum cannot, as a matter of law, gain a windfall in this suit that exceeds this figure.

E.   **Fulcrum Has Failed to Support their Claims for Unjust Enrichment or Money Had and Received**

Fulcrum's primary response in support of its fallback claims of unjust enrichment and money had and received is that both are "flexible." However, flexible does not mean standardless or infinitely malleable.

Both of Fulcrum's equitable claims are fundamentally flawed. Fulcrum's only entitlement to the TOUSA trade claims is through the purported contract with Strategic. This is

undisputed and precludes a recovery for unjust enrichment. Fulcrum does not (and cannot) claim some right to Strategic's TOUSA trade claims outside of the contested agreement. "When a valid agreement already addresses the matter, recovery under an equitable theory is generally inconsistent with the express agreement." *Fortune Prod. Co. v. Conoco, Inc.*, 52 S.W.3d 671, 684 (Tex. 2000). Here, Fulcrum cannot concoct a scenario where it its breach of contract claim fails yet it maintains a legal basis to recover from Strategic under unjust enrichment. The two claims are inconsistent with each other in the context of this suit and cannot both be maintained.

"Money had and received is an equitable action that may be maintained to prevent unjust enrichment when one person obtains money, which in equity and good conscience belongs to another." *Everett v. TK-Taito, L.L.C.*, 178 S.W.3d 844, 860 (Tex. App.—Fort Worth 2005, no pet.). However, Fulcrum does not claim that they made any payments or transferred any consideration to Strategic that should be refunded or reimbursed. Under these circumstances, money had and received cannot apply to a scenario where no money changed hands between the parties. And no matter how "flexible," money had and received cannot apply here to appropriate funds from Strategic and award them to Fulcrum.

## CONCLUSION AND PRAYER

WHEREFORE, PREMISES CONSIDERED, Defendant Strategic Capital Resources, Inc. prays that this Honorable Court:

(1)   Grant Defendant's Amended Motion for Summary Judgment, ordering that Plaintiff take nothing by its claims against Defendant Strategic Capital Resources, Inc. and that the case be dismissed in its entirety; or

(2)    In the alternative, grant Defendant's Amended Motion for Summary Judgment in part and enter an order granting judgment in favor of Defendant on Plaintiff's causes of action and prayers for relief as requested herein; and

(3)    Order any further relief to which Defendant may be entitled either at law or in equity.

> Respectfully submitted,
>
> THOMPSON, COE, COUSINS & IRONS, L.L.P.
>
> By: /s/ Michael B. Johnson
>     Jeff D. Otto
>     State Bar No. 15345500
>     Michael B. Johnson
>     State Bar No. 24029639
> 701 Brazos, Suite 1500
> Austin, Texas 78701
> Telephone: (512) 708-8200
> Telecopy: (512) 708-8777
>
> Alison H. Moore
> State Bar No. 09836500
> 700 N. Pearl Street, Twenty-Fifth Floor
> Dallas, Texas 75201-2832
> Telephone: (214) 871-8200
> Telecopy: (214) 871-8209
>
> ATTORNEYS FOR DEFENDANT
> STRATEGIC CAPITAL RESOURCES, INC.

## CERTIFICATE OF SERVICE

The undersigned certifies that on January 18, 2011, the above and foregoing document was transmitted electronically to the clerk of the Court using the ECF System for filing and was served upon all counsel of record, via ECF, electronic mail:

Collin J. Cox
Deborah J. Karakowsky
YETTER COLEMAN LLP
909 Fannin, Suite 3600
Houston, TX 77010

> /s/ Michael B. Johnson