## IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF TEXAS
## AUSTIN DIVISION

| | | |
|---|---|---|
| FULCRUM CREDIT PARTNERS LLC, | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | CASE NO. A-10-CA-137LY |
| | § | |
| STRATEGIC CAPITAL RESOURCES, INC. | § | |
| | § | |
| Defendant. | § | |

## DEFENDANT STRATEGIC CAPITAL RESOURCES, INC.'S MOTION TO EXCLUDE EXPERT TESTIMONY OF PETER M. LUPOFF

TO THE HONORABLE LEE YEAKEL, U.S.D.J.:

NOW COMES Defendant Strategic Capital Resources, Inc. (hereinafter "Strategic" or "Defendant") and files this *Motion to Exclude Expert Testimony of Peter M. Lupoff* in the above-styled and numbered cause. In support thereof, Strategic would show the Court as follows:

## I.      INTRODUCTION

Plaintiff Fulcrum Credit Partners LLC (hereinafter "Fulcrum" or "Plaintiff") has designated Wall Street hedge fund manager Peter Lupoff as its all-purpose expert in this case. Mr. Lupoff has been designated as Fulcrum's expert concerning both liability issues and damages.

However accomplished as Mr. Lupoff may be as a Wall Street hedge fund manager, his opinions as an expert witness in this cause fail to meet the reliability standards of F.R.E. 702 and applicable law. Specifically, as set forth below, Mr. Lupoff's opinions relating to both liability and damages should be excluded from the trial of this case as unreliable and therefore inadmissible.

Mr. Lupoff has opined concerning the negotiations between Strategic and Fulcrum and whether a binding agreement existed between them to sell Strategic's TOUSA trade claims. However, in reaching these opinions, he proceeded from the foundational premise that Strategic had possession of the Purchase and Sale Agreement for the proposed transaction in October 2009. This is demonstrably false as everyone (except Mr. Lupoff) concedes. The inaccuracy of this premise taints the remainder of his opinions concerning the enforceability of the purported agreement between Strategic and Fulcrum. Mr. Lupoff's opinions in this respect are therefore both unreliable and irrelevant. They should be excluded from the trial of this cause.

Second, Mr. Lupoff has opined upon the "value" of the TOUSA trade claims that Fulcrum sought to acquire from Strategic. Although Fulcrum has not pled it, Mr. Lupoff's opinion may constitute Fulcrum's damage model at trial. However, Mr. Lupoff's opinions in this regard are fatally flawed in numerous respects and should be stricken. The dual scenarios that Mr. Lupoff has manufactured are completely hypothetical and under Texas law are too speculative to form the basis for recovery of lost profits from the failed transaction. Moreover, even Mr. Lupoff admits that the scenarios he describes in his report are not the most likely ones had Strategic actually sold its trade claims to Fulcrum. Rather, he admits that the most likely outcome would have been the contemplated sale of the TOUSA claims to another fund for a fraction of the value Mr. Lupoff ascribes to them. The models posited by Mr. Lupoff would award Fulcrum a windfall—one much larger than the windfall that Fulcrum seeks simply through prosecuting this lawsuit. For these reasons, Mr. Lupoff's opinions concerning the value of the TOUSA trade claims are both unreliable and irrelevant and they should be stricken.

## II.   ARGUMENT AND GROUNDS

**A.   Standard for Admissibility of Expert Testimony**

The admissibility of expert testimony is governed by Fed. R. Evid. 702:

> If scientific, technical, or other specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue, a witness qualified as an expert by knowledge, skill, experience, training, or education, may testify thereto in the form of an opinion or otherwise, if (1) the testimony is based upon sufficient facts or data, (2) the testimony is the product of reliable principles and methods, and (3) the witness has applied the principles and methods reliably to the facts of the case.

"In short, expert testimony is admissible only if it is both relevant and reliable." *Pipitone v. Biomatrix, Inc.*, 288 F.3d 239, 244 (5th Cir. 2002). If a witness is called upon to provide an expert opinion because the witness's specialized knowledge may assist the jury's understanding of the issues, the district court is required by its gatekeeping role to ensure that the expert is properly qualified and that the testimony is reliable. *United States v. McMillan* , 600 F.3d 434, 456 (5th Cir. 2010). *See generally Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579 (1993) (discussing the district court's duty to ensure the reliability of expert testimony).

While there are various factors a court may consider in determining the reliability of an expert's opinion, "the existence of sufficient facts and a reliable methodology is in all instances mandatory." *Hathaway v. Bazany*, 507 F.3d 312, 318 (5th Cir. 2007). "[W]ithout more than credentials and a subjective opinion, an expert's testimony that 'it is so' is not admissible." *Id.* (*quoting Viterbo v. Dow Chem. Co.,* 826 F.2d 420, 424 (5th Cir.1987)).

**B.   Mr. Lupoff's Opinions Concerning the Proposed Fulcrum-Strategic "TOUSA Trade" Should Be Excluded as Unreliable and Irrelevant**

Unsurprisingly, Mr. Lupoff opines that Strategic was bound to sell its TOUSA trade claims to Strategic pursuant to the so-called "Trade Confirmation" of February 4, 2010. *See* December 8, 2010, Summary and Opinion of Peter M. Lupoff at 1. The Lupoff Report is

attached hereto as Exhibit 1.  One of the foundation premises underlying Mr. Lupoff's opinions is his contention that Strategic was in possession of Fulcrum's "Purchase and Sale Agreement" as of October 13, 2009.  *See* Exh. 1 at 1, 8, 9, 10, 19.  Indeed, Mr. Lupoff repeats this point no fewer than nine (9) times throughout his Report.  *See id.*

Mr. Lupoff expands upon the significance of this premise, stating:

> By providing a PSA in advance, when and if the economic terms are agreed upon, there can be greater reliance on the prospective closing as rational parties presumably will review the PSA in advance. Therefore, a buyer/intermediary can reliably choose to expend more time, energy and capital in the due diligence and closing of such claims.

Exh. 1 at 8.  He also notes that:

> The combination of Strategic's possession of Fulcrum's PSA dating back to October 13, 2009 and the nature of the discussions between parties of holdbacks and payment of purchase price suggest that there would have been little reasonable disagreement to the terms and conditions of a PSA.

Exh. 1 at 9.   Then Mr. Lupoff includes this "fact" in each of the sections containing his "Conclusions." Exh. 1 at 10, 19.

This premise, upon which Mr. Lupoff's opinions are based, is demonstrably false.  The proposed Purchase and Sale Agreement ("PSA") for the sale of the TOUSA trade claims was first transmitted to Strategic on February 23, 2010.  Mr. Hamilton, one Fulcrum's principals, unequivocally admitted that the PSA was transmitted to Strategic for the first and only time on that date.  *See* Deposition of Matthew Hamilton at 168:21-169:6.  Excerpts of Deposition of Matthew Hamilton attached hereto as Exhibit 2.

This is not a mere matter of semantics as Mr. Lupoff might now suggest.  Mr. Hamilton acknowledged that there were numerous differences between the PSA on the one hand and the "Standard Terms and Conditions" that Fulcrum does assert were sent to Strategic in October 2009. *See* Exh. 2 at 153:10-165:20.

An expert's opinion may be excluded if there "is simply too great an analytical gap between the data and the opinion proffered." *Gen. Elec. Co. v. Joiner*, 522 U.S. 136, 146 (1997). Moreover, "nothing in Rule 703 requires a court to admit an opinion based on facts that are indisputably wrong. Even if Rule 703 will not require the exclusion of such an unfounded opinion, general principles of relevance will." *Guillory v. Domtar Industries, Inc.*, 95 F.3d 1320, 1331 (5th Cir. 1996) (quoting *Christophersen v. Allied-Signal*, 939 F.2d 1106, 1114 (5th Cir.1991) (en banc)). "In other words, an opinion based totally on incorrect facts will not speak to the case at hand and hence will be irrelevant." *Id.*

In this instance, Mr. Lupoff's opinions are premised upon incorrect facts and include just this type of analytical gap. By basing his opinions upon a demonstrably false premise, his analysis is fatally flawed and cannot meet the reliability standards of FRE 702. Indeed, they are so flawed by this fundamental error that they are ultimately irrelevant and therefore inadmissible.

**C.    Mr. Lupoff's Opinions Concerning Strategic's Alleged Damages Should Be Excluded as Unreliable—Mr. Lupoff Admits that His Damage Model does not Reflect the Most Likely Outcome Had the Trade Occurred**

Mr. Lupoff also provides opinions concerning the "value" of the subject TOUSA trade claims, presumably as a damage model in the event of a liability finding against Strategic. *See* Exh. 1 at 11-17. Mr. Lupoff's opinions concerning the supposed value of the TOUSA trade claims should be excluded and, in any case, are irrelevant as a measure of damages in this case for at least two reasons.

1.    Mr. Lupoff's Opinions Concerning the "Value" of the TOUSA Trade Claims are Unduly Speculative

In order to recover lost profits damages under Texas law, those lost profits must be proved with reasonable certainty. *See Ramco Oil & Gas, Ltd. v. Anglo-Dutch (Tenge), L.L.C.*, 207 S.W.3d 801, 808 (Tex. App.—Houston [14th Dist.] 2006, pet. denied) (citing *Tex.*

*Instruments, Inc. v. Teletron Energy Mgm't, Inc.*, 877 S.W.2d 276, 279 (Tex.1994)).  Evidence of lost profits must not be uncertain or speculative.  *Id.*  Additionally, "[o]pinions or estimates of lost profits must be based on objective facts, figures, or data from which the amount of lost profits may be ascertained." *Holt Atherton Indus., Inc. v. Heine*, 835 S.W.2d 80, 84 (Tex. 1992).

Mr. Lupoff pays lip service to the proposed trade between Fulcrum and a "downstream buyer for a guaranteed, immediate gain" for an agreed upon price.  Exh. 1 at 11.  Then he tosses this evidence aside so that he can conclude that Fulcrum's real loss was up to eight times greater than this proposed trade.  Exh. 1 at 20.

There are numerous flaws with the methodology by which Mr. Lupoff reaches this conclusion that render it unreliable.  First and foremost, Mr. Lupoff ignores the only objective facts that might provide a measure of potential value:  the proposed sale of the TOUSA trade claims by Fulcrum to another buyer.  Mr. Lupoff does not (and cannot) direct the Court to any real-world offer or other similar evidence that Fulcrum could have sold the TOUSA trade claims for an amount remotely approaching the one in his report.

In a related vein, Mr. Lupoff does not refer to or cite any other offers for TOUSA trade claims held by any other party.  Assuming, *arguendo*, that Mr. Lupoff could find TOUSA trade claims other than Strategic's that were sold during the same timeframe for an amount approaching the one that he now ascribes to Strategic's TOUSA trade claims, they might serve as a proxy for their value.  He does not.

Instead, Mr. Lupoff engages in a tortured analysis where he first analogizes trade claims to unsecured bonds.  Exh. 1 at 12.  Of course, as Mr. Lupoff admitted at deposition, the bond market is a transparent one while trade claims are just the opposite.  *See* Deposition of Peter M. Lupoff at 94:18-95:24.  Excerpts of Deposition of Peter M. Lupoff attached hereto as Exhibit 3.

Mr. Lupoff also does not address any of the other differences between trade claims and bonds or the relative sophistication of bond traders vis-à-vis sellers of trade claims.

Then Mr. Lupoff speculates about the amount an "arbitrage investor" or a "fundamental value investor" might pay for trade claims. Exh. 1 at 12-13 (arbitrage investor); Exh. 1 at 14-16 (fundamental value investor). While this might be an interesting academic exercise, Mr. Lupoff does not point to a single offer for or purchase of a TOUSA trade claims by either an arbitrage investor or a fundamental value investor. Moreover, Mr. Lupoff appears to assume that Fulcrum has sufficient assets to buy and hold (rather than flip) these trade claims. Again, this is a completely hypothetical exercise. It is the worst kind of speculation because it is based upon no objective evidence and anticipates the actions of a hypothetical buyer who may not exist.

In short, Mr. Lupoff's opinion in this respect is utterly unreliable. Moreover, it is far too speculative to be relevant to the recovery of lost profits under Texas law. It would only serve to confuse and mislead the jury and should be excluded on this basis.

2.      Mr. Lupoff Admits That the Dual Scenarios Upon Which He Bases His Analysis Were the Two Least Likely Outcomes Had Strategic Sold the TOUSA Trade Claims to Fulcrum

A second reason why Mr. Lupoff's opinions concerning the value of the TOUSA trade claims should be excluded is because even he admits that the scenarios by which he reached his valuation (i.e., sale to an arbitrage investor and sale to a "fundamental value" investor) were the least likely outcomes had Strategic sold its claims to Fulcrum. While Mr. Lupoff, declined to place a percentage likelihood on each potential outcome, he was forced to admit at deposition that the most likely scenario had Fulcrum acquired the TOUSA trade claims was the contemplated sale to the upstream buyer. Exh. 3 at 128:13-129:21. This, as noted above, would

have been for a fraction of the amount that Mr. Lupoff hypothesizes for the other two hypothetical buyers.

It is well established that an expert's opinions are rendered unreliable if that expert fails to consider or exclude alternative causes or outcomes. *See Michaels v. Avitech, Inc.*, 202 F.3d 746, 753 (5th Cir. 2000). The inadequate treatment of other potential causes necessarily undermines the reliability of an expert's opinion. *See Brown v. Parker-Hannifin Corp.*, 919 F.2d 308, 311-12 (5th Cir.1990). This is neatly summarizes one of the principal flaws with Mr. Lupoff's methodology in this instance concerning the value of the TOUSA trade claims. On this basis alone, Mr. Lupoff's opinions concerning valuation of the TOUSA trade claims are unreliable and irrelevant. Strategic respectfully moves that they be excluded from the trial of this cause.

### III.    CONCLUSION AND PRAYER

WHEREFORE, PREMISES CONSIDERED, Defendant Strategic Capital Resources, Inc. prays that this Honorable Court exclude the testimony of Peter Lupoff from the trial of this matter as requested herein and order any further relief to which Defendant may be entitled either at law or in equity.

Respectfully submitted,

THOMPSON, COE, COUSINS & IRONS, L.L.P.

By: /s/ Michael B. Johnson
        Jeff D. Otto
        State Bar No. 15345500
        Michael B. Johnson
        State Bar No. 24029639
     701 Brazos, Suite 1500
     Austin, Texas 78701
     Telephone: (512) 708-8200
     Telecopy: (512) 708-8777

        Alison H. Moore
        State Bar No. 09836500
     700 N. Pearl Street, Twenty-Fifth Floor
     Dallas, Texas 75201-2832
     Telephone: (214) 871-8200
     Telecopy: (214) 871-8209

     ATTORNEYS FOR DEFENDANT
     STRATEGIC CAPITAL RESOURCES, INC.

## CERTIFICATE OF CONFERENCE

On March 14, 2011, Michael B. Johnson consulted with Doug Griffith, counsel for Fulcrum, concerning the foregoing Motion. Mr. Griffith stated that Fulcrum opposed this Motion

## CERTIFICATE OF SERVICE

The undersigned certifies that on March 14, 2011, the above and foregoing document was transmitted electronically to the clerk of the Court using the ECF System for filing and was served upon all counsel of record, via ECF, electronic mail:

Collin J. Cox
Doug Griffith
Deborah J. Karakowsky
YETTER COLEMAN LLP
909 Fannin, Suite 3600
Houston, TX 77010

        /s/ Michael B. Johnson

**DEFENDANT'S MOTION TO EXCLUDE EXPERT TESTIMONY OF PETER M. LUPOFF —PAGE 9**