**IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
AUSTIN DIVISION**

| | | |
|---|---|---|
| FULCRUM CREDIT PARTNERS LLC, | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | Case No. A-10-CA-137 LY |
| | § | |
| STRATEGIC CAPITAL RESOURCES, INC. | § | |
| | § | |
| Defendant. | § | |

**FULCRUM'S RESPONSE TO STRATEGIC'S MOTION TO EXCLUDE
EXPERT TESTIMONY OF PETER M. LUPOFF**

TO THE HONORABLE COURT:

Plaintiff Fulcrum Credit Partners LLC ("Fulcrum") responds to Defendant Strategic Capital Resources, Inc.'s ("Strategic's") Motion to Exclude Expert Testimony of Peter M. Lupoff. (Dkt. No. 91).

Strategic does not dispute that Peter Lupoff is a highly qualified Wall Street executive with decades of personal experience valuing and trading bankruptcy claims. Strategic questions only (1) Mr. Lupoff's characterization of a document that Fulcrum indisputably sent to Strategic in October 2009, four months before the trade in question; and (2) his detailed explanation of why Strategic's TOUSA claims were worth much more in the February 2010 market than the $5.3 million that Strategic quickly obtained after reneging on Fulcrum (for a net gain of $2.9 million). (Dkt. No. 91, Exh. 1 at 11-19). Mr. Lupoff's opinions are based on industry standards and his years of relevant experience. Because the opinions meet the criteria set out in Federal Rule of Evidence 702, the Court should deny Strategic's motion.

**Governing Legal Standards**

Federal Rule of Evidence 702 provides that expert testimony is admissible to "assist the trier of fact to understand the evidence or to determine a fact in issue" where "(1) the testimony is based upon sufficient facts or data, (2) the testimony is the product of reliable principles and methods, and (3) the [expert] witness has applied the principles and methods reliably to the facts of the case." FED. R. EVID. 702. Explicating from these standards, the Supreme Court in *Daubert v. Merrell Dow Pharmaceuticals, Inc.* instructed that trial courts must act as "gatekeepers" for expert testimony, ensuring that such that testimony is both reliable and relevant. 509 U.S. 579, 593-94 (1993).

This gatekeeping function, however, "is not intended to serve as a replacement for the adversary system," which employs "[v]igorous-cross examination, presentation of contrary evidence, and careful instruction on the burden of proof [as] the traditional and appropriate means" of attacking admissible evidence. *Pipitone v. Biomatrix, Inc.*, 288 F.3d 239, 250 (5th Cir. 2002) (internal quotation marks and citations omitted). These traditional evidentiary safeguards are generally more appropriate if a party merely challenges the expert's "bases and sources," which only "affect the weight to be assigned that opinion rather than its admissibility." *United States v. 14.38 Acres of Land*, 80 F.3d 1074, 1077 (5th Cir. 1996) (internal quotation marks and citations omitted).

**Argument**

**I.     Strategic's Sole Ground for Excluding Mr. Lupoff's Liability Opinions Is Misguided and Already Clarified.**

In October 2009, Fulcrum sent its "Standard Terms and Conditions" (Exh. 1) to Strategic, and said, "If we come to agreement on economic terms, these terms will govern the settlement of our transaction." Fulcrum sent an actual Purchase and Sale Agreement (Exh. 2) to

Strategic four months later, after Strategic agreed in writing to the economic terms of the deal. Strategic now asks the Court to exclude Mr. Lupoff's entire opinion (eleven single-spaced pages) regarding the TOUSA claims trade for one reason: that he "mistakenly" labeled Fulcrum's "Standard Terms and Conditions" (Exh. 1) a "form of Purchase and Sale Agreement" in his report. (Dkt. No. 91 at 3-4).

This argument, of course, relates to an alleged basis or source of Mr. Lupoff's opinion, which is generally "left for the jury's consideration." *14.38 Acres of Land*, 80 F.3d at 1077. But in any event, Strategic's contention is incorrect, as Mr. Lupoff was under no misunderstanding.

Unmentioned in Strategic's motion is the fact that weeks ago, after Strategic insisted that the parties should fly to New York for Mr. Lupoff's deposition, he testified plainly that his characterization of the Standard Terms as a "draft PSA" was based on his experience in the claims trading industry. (Exh. 3 (Lupoff Depo.) at 54). In the claims trading industry, the "Standard Terms and Conditions" are interpreted as a form of purchase agreement, because they supply the "terms [that] will govern the settlement of [a] transaction" in the event that an "agreement on economic terms" is reached. (*Id.* at 55). Strategic's counsel directly questioned Mr. Lupoff whether he had used the term "PSA" to refer to the "Standard Terms and Conditions" document. Mr. Lupoff responded:

> Q. It's your position though looking at your report that Fulcrum's form of purchase agreement was in Strategic's possession since October 2009?
>
> A. Summary terms, again there may be semantics but --
>
> Q. [Counsel interruption] Later on you actually refer to it in your report multiple times as a purchase and sale agreement in their possession since October of 2009, correct?
>
> A. ***I may have said that but what I mean is the summary terms.***

> Q. So what you are referring to was not the purchase and sale agreement of February 23rd but you're referring to the standard terms and conditions for distressed trade?
>
> A. Yes.

(*Id.* at 58-59 (emph. added)). The only uncertainty is why Strategic filed a motion on this issue, after Mr. Lupoff explained in his deposition why he used the term that he did. He used the term consistently with his experience in the industry, as others would use it.

Mr. Lupoff's understanding of the facts is obvious, and it serves as the basis for his otherwise unobjected-to opinions regarding customary bankruptcy trading practices and the Fulcrum-Strategic trade. Should Strategic have further doubt, it will have the opportunity to re-visit the issue at trial. Accordingly, Strategic's motion to exclude Mr. Lupoff's liability opinions should be denied.

**II. Strategic's Arguments to Exclude Mr. Lupoff's Opinions on Market Value Are Flawed and Based on Contentions Strategic Lost During the Summary Judgment Briefing.**

The Court likewise should deny Strategic's motion to exclude Mr. Lupoff's opinions regarding the market value of the TOUSA claims at the time of Strategic's breach. This market value forms the basis of damages owed to Fulcrum. Strategic's objection to this testimony as "speculative" (Dkt. No. 91 at 5) reveals only its own misunderstanding of the measure of damages sought by Fulcrum, not any failure by Mr. Lupoff to provide relevant opinions.

Strategic contends that Fulcrum seeks to recover only "lost profits" -- the difference between the price Strategic offered (and confirmed, then reneged) and the price at which "Fulcrum could have sold the TOUSA trade claims" to another buyer. (Dkt. No. 91 at 6). Fulcrum, however, is not seeking just "lost profits," but the difference between the purchase

price from Strategic and the *market value* of the claims, as of February 2010. As Judge Pitman has determined (Dkt. No. 93 at 7), this valuation does not require a showing that Fulcrum would have sold the claims to a later purchaser. *Miga v. Jensen*, 96 S.W.3d 207, 216 (Tex. 2002); *Walden v. Affiliated Computer Servs., Inc.*, 97 S.W.3d 303, 328 (Tex. App.--Hous. [14th Dist.] 2003, pet. denied) (the proper measure of damages is "the difference between the price contracted to be paid and the value of the article at the time when it should have been delivered."). Moreover, Strategic cannot force Fulcrum to confine its evidence to lost profits alone. As Judge Pitman observed, "Strategic has pointed to no authority which holds that [lost profits] is the only measure of value a party may proffer as evidence of damages for breach of contract." (Dkt. No. 93 at 7).

Given that market value can encompass more than just "lost profits," any notion that Mr. Lupoff's damages model is "speculative" falls flat. Strategic wrongly criticizes Mr. Lupoff for "ignor[ing] the only objective facts that might provide a measure of potential value: the proposed sale of the TOUSA trade claims by Fulcrum to another buyer." (Dkt. No. 91 at 6). But Mr. Lupoff provided a detailed explanation, unrebutted in Strategic's motion, on why the market value of the TOUSA trade claims was much higher than reflected in Fulcrum's potential "downstream" sale, and even higher than the $2.9 million additional profit that Strategic quickly secured last spring when it walked away from Fulcrum.[1]  (Dkt. No. 91, Exh. 1 at 11-12, 18-19). Fulcrum's ability to find a specific arbitrage or fundamental value buyer does not control or limit Fulcrum's proposed damage model. *See Miga v. Jensen*, 96 S.W.3d at 220 ("Numerous courts have refused . . . to require a person who has been prevented from obtaining goods by the

---

[1] Throughout its motion to strike Mr. Lupoff's damage opinions as "hypothetical," not once does Strategic acknowledge that it quickly sold most of the claims at nearly three times the price that it had agreed to sell to Fulcrum. It should not be surprising even to Strategic, who claims to be inexperienced in this area, that the claims could have sold for higher prices.

wrongful act of another to establish a particular sale in order to recover.") (O'Neill, J., dissenting).

Without evidence or explanation, Strategic resorts to bluster, dismissing as "tortured" Mr. Lupoff's detailed explanation of the evidence relevant to determining the market value of the TOUSA claims. But Mr. Lupoff's opinion contains pages of unrebutted analysis explaining the reasons why market buyers routinely price bankruptcy claims off of the bond market (Dkt. No. 91, Exh. 1 at 12 (citing multiple industry sources)), and that Strategic's own failure to find these prices was the result of its own ineffective marketing techniques, among other reasons. (*Id*. at 11-19). Mr. Lupoff explained why the claims had significant market value depending on whether they were traded on an arbitrage or fundamental value investing market, and he confirmed with Fulcrum that it had the ability to participate in either market. (*Id.* at 11).

All of these matters were explored, at length, during Mr. Lupoff's deposition. (Exh. 3 at 114-36). Again, if Strategic has further questions, it can present them at trial.

## Conclusion

Mr. Lupoff's opinions are reliable and relevant to the issues at hand. His detailed report reflects an accurate understanding of the facts and a reasonable basis to conclude that the TOUSA claims had significant market value in February 2010 beyond what Strategic realized. The Court should deny Strategic's motion to exclude his expert testimony.

| | |
|---|---|
| March 28, 2011 | Respectfully submitted, |
| | |
| Of Counsel: | /s/ Collin J. Cox |
| R. Paul Yetter | Collin J. Cox |
| State Bar No. 22154200 | State Bar No. 24031977 |
| Douglas S. Griffith | YETTER COLEMAN LLP |
| State Bar No. 08479390 | 909 Fannin, Suite 3600 |
| Deborah J. Karakowsky | Houston, Texas 77010 |
| State Bar No. 24065537 | (713) 632-8000 |
| YETTER COLEMAN LLP | (713) 632-8002 (Fax) |
| 909 Fannin, Suite 3600 | ccox@yettercoleman.com |
| Houston, Texas 77010 | |
| (713) 632-8000 | Attorney-in-Charge for Plaintiff |
| (713) 632-8002 (Fax) | Fulcrum Credit Partners LLC |

**Certificate of Service**

I certify that a true and correct copy of this motion was served upon all counsel of record, via ECF, electronic mail on this the 28th day of March, 2011.

Jeffrey D. Otto
Michael B. Johnson
Thompson, Coe, Cousins & Irons, LLP
701 Brazos, Suite 1500
Austin, Texas 78701

Alison H. Moore
Thompson, Coe, Cousins & Irons, LLP
700 N. Pearl Street, 25th Floor
Dallas, Texas  75201

/s/ Collin J. Cox
Collin J. Cox